IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JEFFREY WIGGINTON                                                                                    PLAINTIFF

V.                                                                             CAUSE NO.: 4:12CV051-SA-JMV

WASHINGTON COUNTY, MISSISSIPPI,
SHERIFF MILTON GASTON, in his
Official and individual capacities; and
WASHINGTON COUNTY SHERIFF'S
DEPARTMENT                                                                                       DEFENDANTS

MEMORANDUM OPINION

Defendants' filed a Motion for Summary Judgment [41] seeking dismissal of the remaining Title VII claim against Washington County, Mississippi, and the malicious interference with employment claim against Sheriff Milton Gaston in his individual capacity. After reviewing the motions, responses, rules and authorities, the Court finds as follows:

*Factual and Procedural Background*

Milton Gaston was elected Washington County's first African American Sheriff in November of 2003. Jeffrey Wigginton, Caucasian, was hired to be a road deputy with the Washington County Sheriff's Department in 2006 by Sheriff Milton Gaston, Chief Jerry Redmond, and Major Percy Miles, all African Americans. Wigginton was terminated in August of 2011 based on a series of reprimands in 2011 that he asserts were racially motivated.

Wigginton's first reprimand concerned the towing of his vehicle and alleged insubordinate behavior toward his supervisor on January 6, 2011. The record indicates that Wigginton's patrol vehicle became disabled in Stoneville woods. Wigginton called dispatch to request a tow truck for his patrol vehicle at the end of his shift. According to the policies of the Washington County Sheriff's Department, Wigginton was required to inform his supervisor first

of any situation involving his patrol unit; instead, Wigginton requested the tow service himself. Sgt. Mack White, Wigginton's African American supervisor, arrived at the scene and asked Wigginton who his supervisor was. The written warning issued from Assistant Chief Deputy Billy Barber noted that Wigginton's "action indicated that [he was] in charge or [he] just chose to be insubordinate." Wigginton was suspended without pay for five days and placed on six months' probation.

Wigginton was again reprimanded on August 4, 2011, for failure to perform an assignment and was suspended one day without pay. In that instance, Sgt. White assigned Wigginton to transport an individual to Chancery Court at 9:00 a.m. and 3:00 p.m. Wigginton performed his duties at 9:00 a.m. He was dispatched to a call, along with another deputy, at 2:11 p.m. in response to a stolen vehicle. Officers Wigginton and Tisaby responded to the call, and by 2:45 p.m. five total officers were on scene. Wigginton was late delivering the individual to the Chancery Court by 3:00 p.m. because he was still on scene. Sgt. White issued the reprimand on the basis that Wigginton should have gotten back into service and resumed his assignment timely.

Wigginton's third reprimand, on August 31, 2011, was for conduct unbecoming of an officer for which he was terminated from employment. On August 27, 2011, a citizen of Washington County filed a report that an off-duty Wigginton was a suspect in a high speed vehicle chase in Greenville. Wigginton admits that on that date, he picked up his cousin in a yellow Mustang and, "speeding a little bit," made a block and dropped the cousin back off at a convenience store. Greenville Police Officer Keith Jackson's report stated that on August 27, 2011, he attempted to pull over a yellow Mustang traveling at a high rate of speed with sirens and blue lights. Officer Jackson was unable to catch the Mustang or pull the Mustang over.

David Harmon, the Caucasian citizen who filed the report with the Washington County Sheriff's Department, was able to follow the Mustang and found it in the Lowe's parking lot. Because Harmon could identify the driver, he pointed Wigginton out to Officer Jackson in the Lowe's store. Officer Jackson reported that when asked what Wigginton was driving, he said a white truck, but later admitted to driving the yellow car. Jackson's report indicated that he contacted Wigginton's supervisor to discuss his fast driving, but did not issue a citation because he was unable to determine the speed of Wigginton's vehicle.

Wigginton thereafter filed a charge with the EEOC claiming he was discriminated on the basis of his race. By earlier ruling, the Court dismissed some of Plaintiff's claims. The only remaining claims are Title VII race discrimination, retaliation and hostile work environment claims against Washington County, Mississippi, and a malicious interference with employment claim against Milton Gaston in his individual capacity.

Defendants have filed a Motion for Summary Judgment [41] contending that no genuine disputes of material fact exist and that judgment as a matter of law is warranted as to all Plaintiff's remaining claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. Id. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Discussion and Analysis*

I. Race Discrimination

Plaintiff contends he was not promoted and was eventually terminated from his position as a road deputy with the Washington County Sheriff's Department because he is white.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not seek to prove his case with direct evidence, instead presenting alleged circumstantial evidence and analyzing his claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36

4

L. Ed. 2d 668 (1973). In order to establish a prima facie case that Defendant failed to promote Plaintiff because of his race, Plaintiff must demonstrate: "(1) [he] belongs to a protected class; (2) [he] sought and was qualified for the promotion; (3) [he] was denied the promotion; and (4) the position [he] sought was filled by someone outside the protected class." Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs, 79 F. App'x 684, 686 (5th Cir. 2003) (citing Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002)).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production - not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price, 283 F.3d at 720.

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly

5

situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578. Plaintiff may also submit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Plaintiff admits that he never formerly applied for a promotion within the Washington County Sheriff's Department.[1] Plaintiff contends that he spoke with a supervisor regarding transferring to either the narcotics division or the investigation division. Plaintiff admits these positions would be lateral transfers with no increase in benefits. Fifth Circuit law directs that a purely lateral transfer cannot be considered an adverse employment action within the meaning of Title VII. See McFall v. Gonzalex, 143 F. App'x 604, 608 (5th Cir. 2005); Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003) (holding that "a decision made by an employer that only limits an employee's opportunities for promotion or lateral transfer does not qualify as an adverse employment action under Title VII"); Burger v. Cent. Apt. Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999) (directing that the denial of plaintiff's request for a lateral transfer does not constitute an adverse employment action under Title VII). Indeed, "an employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action" for purposes of Title VII." Banks, 320 F.3d at 575 (quoting Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 769 (5th Cir. 2011)). It is undisputed that Plaintiff's voluntary request for a transfer did not result in a change of his pay scale, title, or benefits.

---

[1] Plaintiff was specifically asked in his deposition, "Have you ever asked for a promotion and was denied?" He answered, "No."

Accordingly, the Defendants' alleged refusal to transfer Plaintiff to the narcotics or investigation division was not an adverse employment action within the meaning of Title VII; therefore, summary judgment on this claim is proper.

Plaintiff additionally asserts that the Washington County Sheriff prevented him from being deputized by the U.S. Marshal Service. Wigginton asserts that he spoke with a U.S. Marshal in a sporting goods store about joining a special program allowing County deputies to work under the U.S. Marshal banner. Plaintiff further contends that he was prevented from accepting the assignment by Sheriff Gaston, while Plaintiff's black supervisor Mack White was allowed to participate. There is no indication in the record that Mack White was deputized as a U.S. Marshal during the time Wigginton sought that position. In fact, both Sheriff Milton Gaston, who would have had to approve White's participation with the federal agency, and White note that no deputies were allowed to participate as the Sheriff determined that he could not afford to "loan" those officers to the U.S. Marshal Service. Accordingly, Plaintiff has failed to prove the fourth prong of his failure to promote prima facie case.

Defendants additionally argue that Plaintiff cannot demonstrate a prima facie case of race discrimination for his termination. While the Defendants are willing to accept that Plaintiff has satisfied the first three prongs of the prima facie case for analysis of this motion only, they contend that Plaintiff cannot meet the fourth prong necessary to shift the burden to Defendants. Indeed, it is undisputed that Plaintiff was replaced by a white male, Todd Weeks. Plaintiff attempts to identify a similarly situated black deputy that was not terminated for the same actions, but cannot meet the burden. Plaintiff asserts that Mack White, Plaintiff's black supervisor, was hired about the same time as him and engaged in essentially the same conduct, but was not fired. First, the evidence establishes that White was hired in October of 2003, at

7

least two years prior to Plaintiff. Further, Plaintiff has failed to present evidence of a similarly situated black employee who engaged in "conduct unbecoming of an officer" that was not terminated. Plaintiff asserts that Mack White failed to inform his supervisor prior to getting a tow truck to pick up his vehicle shortly after Plaintiff's own incident, but was not written up for the conduct. However, the evidence shows that White, as a shift supervisor, was not required to inform any higher up officials that his patrol vehicle needed to be towed, while Wigginton, as a "slick sleeve," i.e., subordinate employee, was required by the policies to contact a supervisor prior to calling a tow truck. Plaintiff did not follow those procedures, resulting in a write up and suspension. Accordingly, Plaintiff is unable to identify a similarly situated black person under nearly identical circumstances that was treated more favorably. Plaintiff's race discrimination claim is due to be dismissed.[2]

    II.    <u>Hostile Work Environment</u>

To establish a claim based on race discrimination creating a hostile work environment, a plaintiff must prove: "(1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002); <u>Lee v. Reg'l Nutrition Assistance, Inc.</u>, 471 F. App'x 310, 311 (5th Cir. 2012).

"A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

---

[2] Plaintiff points to the number of declining white Washington County Sheriff's Deputies as evidence that he was racially discriminated against. Because Plaintiff cannot get past his prima facie burden, the Court did not analyze them in context with Plaintiff's race discrimination claim. However, even considering those numbers, the Court finds them not to be clearly indicative of discriminatory intent on the part of Washington County.

employment." <u>Alaniz v. Zamora-Quezada</u>, 591 F.3d 761, 771 (5th Cir. 2009). To be sufficiently severe or pervasive to alter the conditions of employment, the conduct must be both objectively and subjectively offensive. <u>EEOC v. WC&M Enters., Inc.</u>, 496 F.3d 393, 399 (5th Cir. 2007). The Court considers the totality of the circumstances to determine whether conduct is objectively offensive. <u>Dediol v. Best Chevrolet, Inc.</u>, 655 F.3d 435, 441 (5th Cir. 2011). This includes "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." <u>Id.</u> (quotation marks and citation omitted). "[S]imple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment." <u>Turner v. Baylor Richardson Med. Ctr.</u>, 476 F.3d 337, 348 (5th Cir. 2007) (quotation marks and citation omitted).

Plaintiff put forth six instances of allegedly harassing conduct that he asserts prove his hostile work environment claim: (1) the Washington County Sheriff's Department's use of meritless reprimands to harass Plaintiff; (2) Gaston's racially charged reaction to Plaintiff's request to be in a movie; (3) the Washington County Sheriff's Department's "white out" policy to purge the Department of whites; (4) the Department's history of tormenting whites with meritless reprimands; (5) Gaston's refusal to transfer white deputies; and (6) Chief Redman's mocking whites.

(i) Plaintiff's Meritless Reprimands

To the extent Wigginton claims that the reprimands he was given in 2011 were meritless, the Court notes that he admitted to being subordinate to his supervisor regarding the January 6, 2011 event; admitted that he was ten minutes late to court as reported on the August 4, 2011 reprimand; and admitted that he was speeding up to 70 miles per hour in a 40 mile per hour zone

9

on August 27, 2011, was approached by a Greenville Police Officer in Lowe's, and that a citizen complained about his speeding. Plaintiff admittedly filed no responses or rebuttals to the reprimands or write-ups for inclusion in his personnel file. After reviewing the Washington County Sheriff's Department Handbook, the Court finds no evidence that Plaintiff's reprimands were made because of his race.

      (ii)      Gaston's Reaction to Plaintiff's Movie Role Request

Plaintiff contends that when he called to inform Sheriff Gaston that he had been asked by a producer to play the deputy role in a low budget film, Gaston replied by stating: "[W]as she racist? Why didn't they call a black man to play the role in the movie?" Wigginton further alleged that Gaston commented that he ran the County; therefore, if anyone was to play a role in the movie, it would be a black man. Wigginton admits that playing a role in the movie had nothing to do with his employment with the Washington County Sheriff's Department. Moreover, this comment, while invoking race, is not necessarily pejorative against the white race.

      (iii)      "White Out Policy"

Plaintiff contends that Redman made the comment that the department needed more "white out." Dondi Gibbs, a black former road deputy, noted by declaration that Redman was "referring to the removal of white people from positions in the sheriff's department." There is no indication on the record when this comment was made, to whom, how many times Redman stated it, or how many persons heard the alleged comment.

      (iv)      Allegedly Baseless Reprimands to Other White Employees

Plaintiff attached a declaration from Ann White, a former dispatcher/secretary in the Sheriff's Department, in which she relayed an incident from 2006 that she received an alleged

baseless reprimand. White, a Caucasian, resigned from the Washington County Sheriff's Department in 2005.[3] Because the actions alleged took place prior to Plaintiff being hired at the Washington County Sheriff's Department, such incidents are not dispositve or helpful in determining whether the atmosphere was subjectively severe or pervasive to alter the conditions of Plaintiff's employment.

    (v)    Refusal to Transfer White Employees

Plaintiff cites and attaches a declaration from Charles Stillman, a former Washington County Sheriff's Deputy who resigned his post in 2006. Stillman contends that while a deputy, he was charged with overseeing the county jail, a job he performed without incident and without serious reprimands. Stillman noted that his ability "to work the jailhouse detail was so strong there were a number of times I was the only deputy serving the jail of 130 inmates." When Stillman requested a transfer out of the jailhouse detail, a job that was "extremely demanding," Gaston never transferred him. Stillman contends he resigned as Gaston was planning to send him to the law enforcement academy with less than three months' notice. Stillman indicated that Gaston was setting him up to fail as he could not get conditioned to complete the academy within three months. He opted to resign instead. There is no evidence other than Stillman's own subjective belief that this action by the Sheriff's Deparment was motivated by race. Further, the Court finds this incident too temporally attenuated to create a hostile work environment in 2011.

    (vi)    Redman's Comments

Plaintiff further contends that Redman made several comments further creating a hostile work environment. Plaintiff indicates that Redman was overheard referring to white people as "slave owners" and stating that white people were not welcome at the Sheriff's Department.

---

[3] The Court is aware these dates are inconsistent, but they were presented and sworn to by the affiant.

11

Drawing all inferences in Wigginton's favor and in light of the totality of the circumstances, the conduct complained of does not rise to the level of severity to state a claim based on a hostile work environment. See Turner, 476 F.3d at 348. The comments in the record were isolated incidents in Wigginton's employment with the Washington County Sheriff's Department. Wigginton provided no evidence of racial slurs, physically threatening or humiliating conduct, objectively offensive comments, or conduct of such frequency or severity to constitute harassment. The race-based comments are legally insufficient to rise to the level of "severe or pervasive," as is required to make a prima facie case of hostile work environment. See Walker v. Thompson, 214 F.3d 615, 626 (5th Cir. 2000) (African-American employees who were subjected to a variety of racial slurs over three-year period raised fact issue as to whether slurs were sufficiently severe or pervasive), abrogated on other grounds, Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996) (plaintiff presented sufficient evidence from which a jury could find severe or pervasive harassment where plaintiff was subjected to offensive, sex-based comments two to three times per week).

Wigginton's own subjective belief that the Washington County Sheriff's Department was a hostile work environment does not rise to the level needed to survive the summary judgment stage. The case law is clear that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. TIG Ins. Co., 276 F.3d at 759. Accordingly, Plaintiff's race-based hostile work environment claim is dismissed.

III.     Retaliation

The Court first notes that Plaintiff's EEOC charge did not include any allegation that his termination was retaliation under Title VII.  See Energy Mgmt. Corp. v. City of Shreveport, 397 F.3d 297, 301 n.2 (5th Cir. 2005) (holding that as jurisdiction cannot be waived, it is the duty of a federal court to first decide, sua sponte if necessary, whether it has jurisdiction before the merits of the case can be addressed).

The Fifth Circuit has held that exhaustion of administrative remedies is a jurisdictional issue to be determined prior to addressing the merits of such claim.  See Pacheco v. Mineta, 448 F.3d 783, 795 (5th Cir. 2006); Tolbert v. United States, 916 F.2d 245, 249 (5th Cir. 1990) (holding that district court has no jurisdiction over Title VII claim where plaintiff failed to exhaust administrative remedies).  Indeed, it is well-settled law in the Fifth Circuit that an "employee cannot proceed in a Title VII action until that employee has exhausted all available administrative remedies." Sapp v. Potter, 413 F. App'x 750, 752 (5th Cir. 2011) (citations omitted).  A necessary prerequisite to exhausting administrative remedies is having begun the administrative process.  Pacheco, 448 F.3d at 788.  The Court is to interpret what is properly embraced in review of a Title VII claim "somewhat broadly" and not solely by the scope of any previously filed administrative charge itself, but by "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" Id. at 789 (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)); McClain v. Lufkin Indus., Inc., 519 F.3d 264, 174-75 (5th Cir. 2008) ("[T]he 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

13

Here, Plaintiff's EEOC charge provided as follows:

> I personally feel that in being discriminate[ed] against by the Washington Co Sheriff's dept. Due to the fact that when I started in 2006 there were 17 white Deputies & 18 black Deputies, & now there is six white Deputies & 30 black Deputies. Over the past 5 ½ years I have been wrote up & suspended for many things, that some of the black Deputies have also done & never got in trouble for. In 2010 I & a black deputy were hired to be deputy U.S. Marshal's but the Sheriff would not let us go. Later I found out that Mc White the black deputy was approved to go to the U.S. Marshal service by the Sheriff but the paper work was never filled out. In 2009 I was asked by a producer to play a roll in a low budget movie that was being filmed in Washington Co., to play a roll as a deputy. After talking to the Sheriff he was irate and made comments that they should have asked for a black to play the roll in the movie. A few weeks later I found out from the owner of Gus Restaurant were the roll took place that Gary Jones a black deputy played the roll. As of Aug. 31, 2011 I have been terminated from the Washington Co Sheriff officer for "getting into trouble three times in one year." There has been black deputies do far worse than me and I feel that I am being discriminated against.

Plaintiff makes no mention of complaints or actions resulting from complaints regarding his allegation that white deputies were treated less favorably than black deputies. Accordingly, the EEOC charge filed did not adequately notify the EEOC or the employer of Plaintiff's potential retaliation claim. See Filer v. Donley, 690 F.3d 643, 647 (5th Cir. 2012 (noting that the purpose of the exhaustion doctrine is to facilitate the administrative agency's investigation and conciliatory functions and to recognize its role as primary enforcer of anti-discrimination laws). Because Wigginton did not file an EEOC charge of retaliation and those allegations could not reasonably grow out of the EEOC charge filed, that claim must be dismissed. The Court additionally finds that the Gupta exception, allowing a plaintiff to proceed on an unexhausted retaliation claim if that claim alleges retaliation for properly bringing an exhausted claim before the district court does not apply, as Plaintiff's retaliation is supposedly premised on complaints about treatment of white employees made prior to his termination. See Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. 1981).

14

Even if the Court were to proceed to an analysis of Plaintiff's retaliation claim, Plaintiff has failed to support his prima facie claim of retaliation. To present a prima facie case of a Title VII retaliation case, plaintiff must show: (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse action. See Gee v. Principi, 289 F.3d 32, 345 (5th Cir. 2002). The problem in Plaintiff's case lies under the third prong. Under that prong, the "plaintiff must present evidence that the final decisionmaker with respect to the adverse employment action was aware of the plaintiff's protected activity." Everett v. Cent. Miss., Inc., Head Start Program, 444 F. App'x 38, 46 (5th Cir. 2011) (citing Ackel v. Nat'l Commc'ns, Inc., 339 F.3d 376, 385 (5th Cir. 2003).

Here, Wigginton admitted that he never made a formal complaint of discrimination to the Washington County Sheriff's Department. Moreover, Wigginton acknowledged that while he informally complained about racially discriminatory conduct, he did not intend for anything to be done about it. He noted in his deposition that he complained to Evan Smith, but could not recall any specific complaint, and did not ask Smith to do anything about the complaints.

He admitted that he never asserted his reprimands were racially motivated to anyone at the Washington County Sheriff's Department. Accordingly, Plaintiff cannot prove any causal connection between his adverse employment action and the alleged complaints he made. Thus, Plaintiff's retaliation claim would fail on the merits as well.

IV.     Malicious Interference with Employment

Plaintiff contends that Milton Gaston interfered with his employment in two ways: (1) by forcing Plaintiff out of his job at Washington County Sheriff's Department because he is white; and (2) by sabotaging his efforts to find another law enforcement job. "A claim for malicious

interference with employment is the same as asserting a tortious interference with contractual relations claim." Gibson v. Estes, 2007 WL 405043, at *2 (N.D. Miss. Feb. 2, 2007) (citing Roberson v. Winston Cnty., Miss., 2002 WL 449667 (N.D. Miss. 2000)). Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. Morrison v. Mississippi Enter. for Tech., 798 So. 2d 567, 574 (¶ 23) (Miss. Ct. App. 2001). Tortious interference with at-will employment can be the basis of a claim. Levens v. Campbell, 733 So. 2d 753, 760 (¶ 27) (Miss. 1999).

To prove his claim, Wigginton must show: (1) the acts were intentional and willful; (2) that they were calculated to cause damages to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and (4) that the actual loss occurred. Gibson, 2007 WL 405043, at *2. "However, 'one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person.'" Morrison, 798 So. 2d at 574 (¶ 24) (quoting Shaw v. Burchfield, 481 So. 2d 247, 255 (Miss. 1985)). Because Sheriff Milton Gaston was Wigginton's employer with the ultimate authority to hire and terminate him, he occupied a position of responsibility as to Wigginton's employment such that his actions were privileged unless taken in bad faith. Id.

As to Plaintiff's first claim, that Gaston forced him out of his job as a deputy because he is white, Plaintiff has put forth no evidence that Plaintiff was terminated in bad faith. Further, Plaintiff has not shown that Gaston's comments to potential employers, such as the Leland Police Department, Greenville Police Department, and Indianola Police Department, were made

16

with the unlawful purpose of causing Plaintiff damage. As noted above, Plaintiff admitted to the infractions noted in his reprimands in 2011. His only indication that Gaston "sabotaged" his ability to find other law enforcement work is Wigginton's assertions that the Leland Police Department Chief commented that the Washington County Sheriff's Department was fighting his hire, the Greenville Police Chief's statement that he did not "want any problems with anybody," and the vague statement that Gaston personally intervened to get his hire "canceled" with the Indianola Police Department. These statements do not arise to the level of malicious interference to overcome the privilege noted above. Accordingly, Plaintiff's claim against Milton Gaston, in his individual capacity, is dismissed.

*Conclusion*

Plaintiff has failed to support his prima facie burden of race discrimination for promotion or termination, hostile work environment, or retaliation. All Plaintiff's Title VII claims against Washington County are dismissed. Moreover, Plaintiff has failed to create a genuine dispute of material fact as to his claim against Milton Gaston in his individual capacity. Accordingly, Defendants' Motion for Summary Judgment [41] is GRANTED, and this case is DISMISSED.

SO ORDERED, this the 20th day of June, 2013.

 /s/ Sharion Aycock  
 **U.S. DISTRICT JUDGE**